## Ash v. Levinson

*R. B. Simmons*, for plaintiff.

*Simon Pearl* and *Norman H. Brown*, for defendants.

GLEESON, J. October 4, 1963.—This case was heard without the presentation of actual testimony by either side. The record consists of pleadings, stipulated documents and statements of counsel regarding un-

disputed facts. The litigation essentially involves questions of law.

Defendant, Fairmount Motor Products, Inc., shall hereinafter be referred to as the "company" and defendant, Girard Trust Corn Exchange Bank, shall hereinafter be referred to as the "trustee" and the individual defendants shall hereinafter be referred to as the "committee".

It appears that plaintiff entered into the employment of company prior to January 31, 1957. On January 31, 1957, company's profit-sharing plan went into effect. By virtue of his tenure as an employe of company, plaintiff became a member of the profit-sharing plan on January 31, 1959. On that date, he had completed more than three years of employment with company and by provisions of the plan he became a member. The plan itself speaks of a member's "vested interest", which subject we shall notice shortly. On April 16, 1962, the company amended the plan, and the amendment provided, among other things, that any member who left the employ of the company to compete with it would lose all interest he had in the plan. Plaintiff had notice of this amendment and, despite the notice, thereafter left the employ of company on October 1, 1962, and, in fact, did take a position that put him into competition with the company. It has been stipulated by counsel that the total amount involved herein is $3,674.16, which represents the cash value of plaintiff's interest up to the time of the amendment on April 16, 1962. It is further stipulated that if plaintiff is entitled to relief, this amount, with interest thereon from October 1, 1962, shall be the full extent of his relief; no accounting from the trustee or any other form of relief is necessary.

In this factual context, it is our view that plaintiff is entitled to the relief stipulated. The plan emphasizes the word "vested" when it describes the interest

of a member in the plan. In fact, the heading of section IV uses the wording "Vesting" as describing the subject with which section IV deals. A vested interest either in personal or real estate is not one that requires immediate enjoyment. Enjoyment of a vested interest can be postponed until a time later than when the interest is created: Black's Law Dictionary, 3d ed., page 1812. Consequently, the fact that the money was to be paid out to the member at some time later, the termination of his employment, than when his vested interest was created, by becoming a member, does not defeat the vesting of the member's interest.

The amendment to the plan seeks to divest the member of his interest in the event that the employe enters into a competing activity, such as was done by the member in the instant case. Had the matter contained in the amendment been part of the original plan, we would have to deal with a different problem. However, it was not part of the original plan, and we do not feel that it operates to divest plaintiff of his interest. "Vest" is a word of art and has a definite meaning in the law. The trust agreement and the plan were obviously prepared by professionally trained people, and when the word "vest" was used, it was no doubt intended to have its legally recognized meaning. Accordingly, it is our view that the sum of $3,674.16, together with interest thereon from October 1, 1962, should be awarded to plaintiff as the entire relief to which he is entitled.

### Decree Nisi

And now, October 4, 1963, it is adjudged and decreed that the defendant trustee, Girard Trust Corn Exchange Bank, turn over to plaintiff the sum of $3,674.16, together with interest thereon from October 1, 1962. Defendants, the committee, William Levinson, Malcolm Freudenheim and Jordan Berman,

and the defendant company, Fairmount Motor Products, Inc., are further ordered to perform all acts necessary to effectuate this decree.

The prothonotary is directed to enter this decree nisi and give notice thereof to the parties or their counsel of record, and, unless exceptions are filed within 20 days thereafter, the decree nisi shall become final as of course.